**LEE LITIGATION GROUP, PLLC**
Rony Guldmann (RG 5323)
148 W 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-661-0052
Fax: 212-465-1181
rony@leelitigation.com
*Attorneys for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| H.L., by his parent C.L.;<br>C.L., individually and on behalf of H.L.,<br>*on behalf of themselves and all others similarly situated*,<br><br>Plaintiffs,<br><br>-against-<br><br>WILDLIFE CONSERVATION SOCIETY and CAITLYN [LAST NAME UNKNOWN],<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff H.L., by his parent C.L., and Plaintiff C.L., individually and on behalf of H.L. (collectively, "Plaintiffs"), on behalf of all others similarly situated, by and through their undersigned attorneys, hereby file this Class Action Complaint against Defendants WILDLIFE CONSERVATION SOCIETY (hereinafter, "WCS" or "Defendant WCS") and CAITLYN [LAST NAME UNKNOWN] ("Caitlyn" or "Defendant Caitlyn"; collectively, "Defendants") and state as follows:

**NATURE OF THE ACTION**

1.  Plaintiffs C.L. and his autistic minor son, H.L. bring this class action against Defendants for failing to make reasonable accommodations for autistic guests visiting the New

York Aquarium entertainment and exhibition venue ("the Aquarium").

2. Plaintiffs bring this class action under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et seq*; New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law, Executive Law § 292 *et seq*.; New York State Civil Rights Law ("NYSCRL"), CLS Civ R § 40 *et seq*.; New York City Human Rights Law ("NYCHRL"), N.Y.C. Administrative Code § 8-102, *et seq.*

3. Plaintiffs seek all applicable compensatory and punitive damages, injunctive relief, and attorneys' fees and costs.

## PARTIES

4. Plaintiff C.L. is and at all relevant times has been a resident of New York County, New York. Plaintiff H.L. is C.L.'s minor son and has been diagnosed with autism.

5. Defendant Wildlife Conservation Society is a not-for-profit corporation that is organized under the laws of New York and headquartered at 2300 Southern Boulevard, Bronx, NY 10460. It owns and operates the Aquarium, a place of public accommodation subject to the ADA and analogous New York civil rights laws. WCS also operates other New York City venues, such as the Bronx Zoo, the Central Park Zoo, the Prospect Park Zoo, and the Queens Zoo.

6. Defendant Caitlyn is an employee of WCS who exercises managerial and supervisory authority at the Aquarium.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction of this action pursuant to:

   (A) 28 U.S.C. § 1331 and 42 U.S.C. § 12188, for Plaintiffs' claims arising under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.*,

     ("ADA"); and

  (B) 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. See 28 U.S.C. § 1332(d)(2).

8. Venue is proper in the Southern District pursuant to 28 U.S.C. §§ 1391 because Defendant WCS is headquartered in this District.

9. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, over Plaintiffs' pendent claims under NYSHRL, NYSCRL, and NYCHRL.

## STATEMENT OF FACT

10. This class action seeks to put an end to systemic civil rights violations committed by Defendants. As a place of public accommodation, the Aquarium is required under the Americans with Disabilities Act ("ADA") and New York civil rights laws to offer reasonable accommodations to individuals with disabilities when such is required to facilitate their full and equal enjoyment of the facility.

11. Autism Spectrum Disorder is a medically recognized developmental disability than can create significant social, communication, and behavioral challenges for those suffering from it. Such individuals continuously confront problems such as social isolation, difficulties gaining employment, and myriad stresses that others will never encounter.

12. In particular, autism can make it difficult for individuals, and especially children, to tolerate certain forms of deferred gratification; for example, having to wait in line.

3

Autistic persons may experience time differently from others and be unable to occupy their minds with something else as they are waiting, making every moment of a wait psychologically painful. Autistic persons can also be susceptible to severe anxiety if forced to depart from familiar and established routines. Problems that nondisabled individuals will experience as trivial inconveniences may be psychologically debilitating to those suffering from autism. *See A.L. v. Walt Disney Parks & Resorts US, Inc.*, 900 F.3d 1270, 1281 (11th Cir. 2018) ("Under the above section discussing 'insistence on sameness' and 'adherence to routines,' the DSM-5 provides examples of behaviors including 'extreme distress at small changes, difficulties with transitions, rigid thinking patterns, greeting rituals, need to take same route or eat same food every day.' See DSM-5 at 50. Courts recognize this aspect of autism."); *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 996 (2017) ("Autism is a neurodevelopmental disorder generally marked by impaired social and communicative skills, engagement in repetitive activities and stereotyped movements, resistance to environmental change or change in daily routines, and unusual responses to sensory experiences.") (quotation marks and citations omitted); *United States v. Spero*, 382 F.3d 803, 804 n.3 (8th Cir. 2004) ("Affected individuals may adhere to inflexible, nonfunctional rituals or routine.") (quoting Physician's Desk Reference Medical Dictionary 171 (2d ed. 2000)).

   13. Plaintiff H.L. was suffering from these afflictions on September 26, 2021, when he went on a family outing to Brooklyn's Coney Island area with his father (Plaintiff C.L.), his mother, and the couple's two-and-a-half-year-old daughter. After strolling around the area, the family arrived at the New York Aquarium, located at 602 Surf Avenue, intending to attend the Aquarium's sea lion show. C.L. immediately noticed that the line was exceedingly long and realized that the wait would cause his autistic son great frustration and anxiety.

14. C.L. had previously taken H.L. to the Bronx Zoo, also operated by Defendant WCS, and the Bronx Zoo accommodated autistic individuals through a program that allowed them to bypass the line (like many other venues, as discussed below). So C.L. was expecting that WCS would have instituted a similar program at the Aquarium and was shocked to learn that it had not.

15. C.L. knew that waiting in line would cause H.L. great mental anguish. But so, too, would abandoning this family trip. So, the family opted for what seemed like the lesser evil of waiting in line and wound up waiting 20 minutes. As had been predicted, every moment was tremendously painful for H.L.

16. Finally, they reached the ticket window, but C.L. was refused entrance because he was carrying his two-and-a-half-year-old daughter's bicycle, which, weighing less than 10 pounds and standing at less than two feet, was more a toy than a real bicycle.

17. Given the stress and anxiety that had built up in H.L. during the long wait in line, C.L. knew that asking H.L. to wait another 30 minutes while C.L carried the toy bicycle back to the car would put H.L. over the edge. So, C.L. explained the situation to the ticket attendant and requested that the Aquarium accommodate him and his disabled child by allowing C.L. to carry the bicycle to the Aquarium's outdoor Aquatheater, where the sea lions would be performing. To be clear, C.L. was not proposing that his daughter be permitted to ride the toy bicycle within the premises, as C.L. would be carrying it the entire time.

18. Nevertheless, the ticket attendant refused, and C.L. requested to speak to a supervisor. After another 10-minute wait, a supervisor named Caitlyn arrived and C.L. once again explained the situation that had led to the request for accommodation.

19. However, Caitlyn refused to accommodate the family and responded with a resolute and unequivocal *No*. She did not offer C.L. any explanation for why the Aquarium could not accommodate his modest request (which would not have disrupted Aquarium operations in any way) other than to say, "Look at the website. It says 'No Bikes.'" C.L. again attempted to explain the special circumstances that had led to the situation. But Caitlyn would not be swayed, even as H.L. was beginning to spiral out of control, and, without explanation, simply refused to provide any reasonable accommodations.

20. As a result of Defendants' action, H.L. was denied the full and equal enjoyment of the Aquarium, given the trauma created by the long wait in line and the subsequent dispute with Caitlyn, which did not immediately abate once the family reached the sea lion show. This was the result of Defendants' willful indifference to the Americans with Disability Act and related New York State civil rights laws, which require venues like the New York Aquarium to accommodate individuals with disabilities so as to grant them equal access to, and equal enjoyment of, the facilities.

21. Caitlyn had a supervisory position and was fully qualified to represent WCS policies to Plaintiffs and the public, so her refusal to accommodate H.L. cannot be discounted as the isolated decision of a low-level employee, especially given WCS's willful failure to institute line-waiting policies that satisfy the needs of autistic guests.

22. In contrast, many other entertainment and exhibition venues recognize that autism is a serious disability and have gone out of their way to accommodate those suffering from it. As noted, WCS's Bronx Zoo facility does accommodate autistic patrons, and other examples abound. The Disneyland Resort in California publishes a brochure titled "A Resource

6

for Guests with Cognitive Disabilities including Autism Spectrum Disorder (ASD)." *See* **Exhibit A**. One of these resources is the "Disability Access Service," which is explained as follows:

> The Disability Access Service is designed for Guests who are unable to tolerate extended waits at attractions due to their disability, and the service allows Guests to schedule a return time that is comparable to the current queue wait for the given attraction. Depending on a Guest with a cognitive disability's individual service needs, additional accommodations are available.

23. The Six Flags Great Adventure amusement park makes similar accommodations. Relevant portions of its "Safety and Accessibility Guide" are attached as **Exhibit B**. The Guide states that guests with cognitive and other disorders who seek helpful accommodations should begin by obtaining an "Individual Accessibility Card" or "IAC" by registering at www.accessibilitycard.org. The card can then be presented at the Ride Information Center inside the park in order to receive necessary accommodations. And, in line with Disneyworld, Six Flags provides disabled individuals with an "Attraction Access Pass" that allows them to reserve a specific time to ride attractions in order to bypass the standard queue.

24. Plaintiffs do not necessarily contend that Defendants are obligated to allow all autistic children and their guardians to simply skip the line at any time they choose. Some entertainment venues began with such a policy before changing to a reservation-based system that provides disabled guests a window of time during which they can access a service (like a ride) instead of waiting in line—allowing autistic children to occupy their minds with other things as they wait their turn to enjoy an attraction.

25. The problem, however, is that Defendants *offer no accommodation of any kind*. Attached as **Exhibit C** is an Aquarium webpage called "Accessibility." The webpage discusses masking and vaccination, restroom accessibility, and service animals. But there is no discussion of cognitive disabilities like autism or Defendants' willingness to accommodate them. Not only

does the New York Aquarium make no provision for bypassing lines, it more generally fails to communicate to prospective visitors that it is prepared to reasonably adjust its rules on an as-needed basis when such is necessary to give disabled children equal access to the facilities. As shown by Plaintiffs' case, disabilities, and especially cognitive disabilities, can often lead to all kinds of difficult situations that might not have been anticipated in advance but that venues must have the flexibility to effectively address as they arise, especially when doing so imposes no real costs on the venue. As shown by the conduct of the ticket attendant and Caitlyn, Defendants' employees utterly lack the training to handle these situations.

26. Defendants therefore violated the ADA, NYSHRL, NYSCRL, and NYCHRL. In enacting the ADA, Congress provided a clear national mandate for the elimination of discrimination against individuals with disabilities. Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by places of public accommodations that are inaccessible to those with both physical and cognitive disabilities. Similarly, New York state and local laws require places of public accommodation to ensure access to goods, services, and facilities by making reasonable accommodations for persons with disabilities.

27. The Aquarium provides the public with a wide array of educational and entertainment opportunities. Yet, Defendants impose access barriers that make it difficult, if not impossible, for autistic individual to access these, when Defendants could eliminate these barriers at almost no cost, as shown by Disney, Six Flags, and WCS's own Bronx Zoo.

28. This class action seeks compensatory and punitive damages for all the victims of Defendants' policies. It also seeks declaratory and injunctive relief to correct those policies by forcing Defendants to comply with all relevant state and federal laws.

## **CLASS ACTION ALLEGATIONS**

29. Plaintiffs seek certification of the following nationwide Class pursuant to Rule 23(a), 23(b)(2), and/or 23(b)(3) of the Federal Rules of Civil Procedure: "All individuals in the United States who have been diagnosed with autism and, during the relevant statutory period, unsuccessfully attempted to access, were deterred from accessing, or had to wait in line for entrance to, the Aquarium because of WCS policies."

30. Millions of Americans have autism, including many in New York. Thus, Class members are so numerous that joinder of all such persons is impractical and the disposition of their claims in a class action benefits both them and the judicial system.

31. There are questions of law and fact common to the Class that predominate over any individual questions, including without limitation, the following:

    (a) Whether the Aquarium is a place of public accommodation under the ADA;

    (b) Whether WCS's refusal to accommodate individuals with autism denies them the full and equal enjoyment of the Aquarium;

    (c) Whether accommodating such individuals through systems like those implemented by Disney and Six Flags would create an undue burden for WCS or fundamentally alter the nature of Aquarium services;

32. The claims of Plaintiffs are typical of those of Class members. Like H.L., Class members are autistic individuals for whom lines create access barriers to the full and equal enjoyment of the facilities.

33. Plaintiffs will fairly and adequately represent and protect the interests of Class members because Plaintiffs have retained competent counsel that is experienced in both complex class action litigation and ADA cases. Plaintiffs have no interests antagonistic to other Class members.

34. Class certification is appropriate pursuant to Fed. R. Civ P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiffs and the Class as a whole.

35. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to Class members clearly predominate over questions affecting only individual Class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

36. Judicial economy will be served by maintenance of this lawsuit as a class action in that this will prevent burdens that would otherwise be placed upon the judicial system by the filing of numerous similar suits by other autistic individuals or their guardians.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**Violation of 42 U.S.C. § 12181,** *et seq.*—**Title III of the Americans with Disabilities Act**
*(brought on behalf of Plaintiffs and the Class)*

37. Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully herein and further alleges as follows:

38. Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12182(a), provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." Title III also prohibits an entity from "[u]tilizing standards or criteria or methods of administration that have the effect of discriminating on the basis of disability." 42 U.S.C. § 12181(b)(2)(D)(I).

39. Under 42 U.S.C.S. § 12102, disability is defined as follows:

> (1) Disability. The term "disability" means, with respect to an individual—
> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
> . . . .
> (2) Major life activities.
> (A) In general. For purposes of paragraph (1), major life activities include, but are not limited to . . . eating . . . .

40. The Aquarium is a public accommodation within the definition of 42 U.S.C. § 12181(7)(C) because it is a "place of exhibition or entertainment."

41. Defendants are subject to Title III of the ADA because they own and/or operate the Aquarium.

42. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(I), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

43. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

44. Under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

45. Under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

46. The acts and omissions alleged herein constitute violations of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* and the regulations promulgated thereunder. Would-be patrons of the Aquarium who are autistic have been denied full and equal access to the facility.

47. When Defendants' access barriers were brought to their attention by Plaintiff C.L., they refused to take any steps to remove these barriers.

48. Thus, Defendants will continue in the future to discriminate against H.L. and other similarly situated individuals in violation of the ADA. C.L. and H.L. hope to visit the Aquarium again. However, they are deterred from this by Defendants' ongoing policy of willful discrimination against autistic persons.

49. Unless the Court enjoins Defendants from continuing to engage in these unlawful practices, Plaintiffs and Class members will continue to suffer irreparable harm.

50. The Court should (1) require WCS to institute a policy allowing autistic patrons to either skip lines or reserve entry times ahead of their arrival at the Aquarium; (2) require WCS to train Aquarium staff to provide reasonable accommodations to guests with disabilities whenever such does not impose an undue burden or fundamentally alter the nature of Aquarium services.

51. Plaintiffs are also entitled to reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION

**Violation of New York State Human Rights Law, N.Y. Exec. Law, § 292** *et seq.*
*(brought on behalf of Plaintiffs and the Class)*

52. Plaintiffs reallege and incorporate by reference the foregoing allegations as though fully set forth herein and further allege as follows:

53. N.Y. Exec. Law § 296(2)(a) provides that it is "an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation . . . because of the . . . disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

54. The Aquarium is a sales establishment and public accommodation within the definition of N.Y. Exec. Law § 292(9).

55. Defendants are subject to the New York Human Rights Law because they own and/or operate the Aquarium. Defendants are persons within the meaning of N.Y. Exec. Law § 292(1).

56. Defendants are violating N.Y. Exec. Law § 296(2)(a) in imposing access barriers to the Aquarium. These barriers preclude autistic would-be guests from accessing the full and equal enjoyment of the Aquarium.

57. Under N.Y. Exec. Law § 296(2)(c)(I), unlawful discriminatory practices include, among other things, "a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations."

13

58. Under N.Y. Exec. Law § 296(2)(c)(II), unlawful discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden."

59. Defendants' actions constitute willful intentional discrimination against Class members in violation of N.Y. Exc. Law § 296(2) because Defendants have continued to maintain their access barriers even after having been alerted to the problem by Plaintiff C.L.

60. Defendants have failed to take any prompt and equitable steps to remedy their discriminatory conduct. These violations are ongoing.

61. Thus, Defendants discriminate, and will continue in the future to discriminate, against Plaintiffs and Class members in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations, and/or opportunities offered by the Aquarium.

62. Unless the Court enjoins such discrimination, Plaintiffs and Class members will continue to suffer irreparable harm.

63. Plaintiffs and Class members are entitled to compensatory damages for each and every time they either failed to access, were deterred from attempting to access, or had to wait in line to access, the Aquarium as the result of Defendants' discriminatory policies.

64. Plaintiffs are also entitled to reasonable attorneys' fees and costs.

## THIRD CAUSE OF ACTION

**Violation of New York State Civil Rights Law, CLS Civ R § 40** *et seq.*
*(brought on behalf of Plaintiffs and the Class)*

65. Plaintiffs served notice thereof upon the attorney general as required by N.Y. Civil Rights Law § 41.

66. Plaintiffs reallege and incorporate by reference the foregoing allegations as though fully set forth herein and further allege as follows:

67. N.Y. Civil Rights Law § 40 provides that "all persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No persons, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any such place shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities and privileges thereof . . . ."

68. N.Y. Civil Rights Law § 40-c(2) provides that "no person because of . . . disability, as such term is defined in section two hundred ninety-two of executive law, [shall] be subjected to any discrimination in his or her civil rights, or to any harassment, as defined in section 240.25 of the penal law, in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision."

69. The Aquarium is a sales establishment and public accommodation within the definition of N.Y. Civil Rights Law § 40-c(2).

70. Defendants are subject to New York Civil Rights Law because they own and/or operates the Aquarium. Defendants are persons within the meaning of N.Y. Civil Law § 40-c(2).

15

71. Defendants are violating N.Y. Civil Rights Law § 40-c(2) in imposing access barriers to the Aquarium. These deny autistic patrons full and equal access to facilities, goods, and services that Defendants make available to the non-disabled public.

72. N.Y. Civil Rights Law § 41 states that "any corporation which shall violate any of the provisions of sections forty, forty-a, forty-b or forty-two . . . shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby . . . ."

73. Thus, Class members are each entitled to damages of at least $100 for each of WCS's violations.

## FOURTH CAUSE OF ACTION

**Violation of New York City Human Rights Law, N.Y.C. Admin. Code § 8-102, *et seq.***
*(on behalf of Plaintiffs and the Class)*

74. Plaintiffs reallege and incorporates by reference the foregoing allegations as if set forth fully herein and further allege as follows:

75. N.Y.C. Administrative Code § 8-107(4)(a) provides that "[i]t shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation, because of . . . disability . . . directly or indirectly, to refuse, withhold from or deny to such person, any of the accommodations, advantages, facilities or privileges thereof."

76. The Aquarium is a sales establishment and public accommodation within the definition of N.Y.C. Administrative Code § 8-102(9).

77. Defendants are subject to NYCHRL because they own and/or operate the Aquarium. Defendants are persons within the meaning of N.Y.C. Admin. Code § 8-102(1).

16

78.     Defendants are violating N.Y.C. Admin. Code § 8-107(4)(a) in imposing access barriers to the Aquarium, thereby denying autistic patrons full and equal access to facilities, goods, and services that Defendants make available to the non-disabled public. Specifically, Defendants are required to "make reasonable accommodation to the needs of persons with disabilities" and to "make reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

79.     Defendants' actions constitute willful intentional discrimination against Class members on the basis of a disability in violation of the N.Y.C. Admin. Code §§ 8-107(4)(a) and 8-107(15)(a) in that Defendants have:

        (a) operated facilities that are inaccessible to autistic individuals, with knowledge of the discrimination; and/or

        (b) operated a public accommodation where it is sufficiently intuitive and/or obvious that it is inaccessible to autistic individuals; and/or

        (c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to Plaintiffs and Class members.

80.     Defendants have failed to take any prompt and equitable steps to remedy their ongoing discriminatory conduct.

81.     Defendants discriminate, and will continue in the future to discriminate, against Plaintiffs and Class members on the basis of their disabilities in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations, and/or opportunities afforded by the Aquarium. Unless the Court enjoins Defendants from continuing to engage in these unlawful practices, Plaintiffs and Class members will continue to suffer irreparable harm.

82. Plaintiffs are also entitled to compensatory and punitive damages under N.Y.C. Administrative Code §§ 8-120(8) and 8-126(a) for each offense.

83. Plaintiffs are also entitled to reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request relief as follows:

a. An injunction requiring Defendants to take all the steps necessary to place the Aquarium in full compliance with the requirements of the ADA, New York civil rights laws, and their implementing regulations, including but not limited to training employees to reasonably adjust rules in order to manage unique and/or unforeseen contingencies caused by guests' disabilities;

b. A declaration that Defendants own, maintain and/or operate the Aquarium in a manner that discriminates against autistic patrons in violation of the Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.,* N.Y. Exec. Law § 296, *et seq.,* and N.Y.C. Administrative Code § 8-107, *et seq.*;

c. An Order certifying this case as a Class action under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiffs as Class Representatives, and appointing their attorneys as Class Counsel;

d. Compensatory damages in an amount to be determined by proof, including all applicable statutory damages, to Plaintiffs and Class members for violations of the laws enumerated herein;

e. Such punitive damages as are applicable;

 f. Plaintiffs' reasonable attorneys' fees, expenses, and costs of suit as provided by state and federal law;

 g. Pre- and post-judgment interest to the extent permitted by law; and

 h. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demands trial by jury on all issues so triable as of right by jury.

DATED: December 17, 2021

              */s/ Rony Guldmann*
              Rony Guldmann

              LEE LITIGATION GROUP, PLLC
              Rony Guldmann (RG 5323)
              148 W 24th Street, 8th Floor
              New York, NY 10011
              Tel.: 212-661-0052
              Fax: 212-465-1181
              rony@leelitigation.com
              *Attorneys for Plaintiffs and the Class*